IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERIK GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | FILE No.  4:20-CV-00020 |
| EDGEBROOK BUSINESS, INC. and | ) | |
| SPRING ENTERPRISES, LP, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

COMES NOW, ERIK GARCIA, by and through the undersigned counsel, and files this, his Amended Complaint against Defendants EDGEBROOK BUSINESS, INC. and SPRING ENTERPRISES, LP, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG").  In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq*., based upon Defendants' failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.      Plaintiff ERIK GARCIA (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3.      Plaintiff is disabled as defined by the ADA.

4.      Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing,

1

grabbing, grasping and/or pinching.

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      Plaintiff is also an independent advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA.  His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property, including returning to the Property as soon as it is accessible ("Advocacy Purposes").

7.      Defendant, EDGEBROOK BUSINESS, INC. (hereinafter "EDGEBROOK BUSINESS, INC."), is a Texas company that transacts business in the State of Texas and within this judicial district.

8.      Defendant, EDGEBROOK BUSINESS, INC., may be properly served with process via its registered agent for service, to wit:  Barkat S. Maredia, Registered Agent, 85 East Edgebrook, Houston, TX  77034.

9.      Defendant, SPRING ENTERPRISES, LP (hereinafter "SPRING ENTERPRISES, LP"), is a Texas limited partnership that transacts business in the State of Texas and within this judicial district.

10.      Defendant, SPRING ENTERPRISES, LP, may be properly served with process via its registered agent for service, to wit:   c/o Ricky Ganim, Registered Agent, 3320 Amherst Street, Houston, TX  77005.

## FACTUAL ALLEGATIONS

11.     On or about December 22, 2019, Plaintiff was a customer at "Zip N Food Store" a business located at 85 E. Edgebrook Drive, Houston, TX  77034 referenced herein as "Zip N".

12.     Zip N is operated by Defendant, EDGEBROOK BUSINESS, INC. and it is located on the Property.

13.     Defendant, EDGEBROOK BUSINESS, INC., is the lessee and operator of Zip N which is located on the Property.

14.     Defendant, SPRING ENTERPRISES, LP, is the owner or owner of the real property and improvements that Zip N is situated upon and that is the subject of this action, referenced herein as the "Property."

15.     Plaintiff lives 10 miles from Zip N and the Property.

16.     Plaintiff's access to the business(es) located 85 E. Edgebrook Drive, Houston, TX 77034, Harris County Property Appraiser's account number 0421800000191 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendants, EDGEBROOK BUSINESS, INC. and SPRING ENTERPRISES, LP, are compelled to remove the physical barriers to access and correct the ADA violations that exist at Zip N and the Property, including those set forth in this Amended Complaint.

17.     Plaintiff has visited Zip N and the Property at least once before as a customer and advocate for the disabled.  Plaintiff intends on revisiting Zip N and the Property within six months or sooner.  The purpose of the revisit is to be a return customer, to determine if and when Zip N and the Property is made accessible and to maintain standing for this lawsuit for Advocacy

3

Purposes.

18.     Plaintiff intends on revisiting Zip N and the Property to purchase goods and/or services as a return customer living in the near vicinity as well as for Advocacy Purposes, but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

19.     Plaintiff travelled to Zip N and the Property as a customer and as an independent advocate for the disabled, encountered the barriers to access at Zip N and the Property that are detailed in this Amended Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at the Zip N and the Property.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

20.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*

21.     Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)     historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)     discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)     individuals with disabilities continually encounter various forms of

4

discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

22.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

        * * * * *

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

23.      The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

24.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

25.     Zip N is a public accommodations and service establishment.

26.     The Property is a public accommodation and service establishment.

5

27.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

28.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

29.     Zip N must be, but is not, in compliance with the ADA and ADAAG.

30.     The Property must be, but is not, in compliance with the ADA and ADAAG.

31.      Plaintiff has attempted to, and has to the extent possible, accessed Zip N and the Property in his capacity as a customer of Zip N and the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at Zip N and the Property that preclude and/or limit his access to Zip N and the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Amended Complaint.

32.     Plaintiff intends to visit Zip N and the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at Zip N and the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at Zip N and the Property that preclude and/or limit his access to Zip N and the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including

6

those barriers, conditions and ADA violations more specifically set forth in this Amended Complaint.

33.     Defendants, EDGEBROOK BUSINESS, INC. and SPRING ENTERPRISES, LP, have discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of Zip N and the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

34.     Defendants, EDGEBROOK BUSINESS, INC. and SPRING ENTERPRISES, LP, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants, EDGEBROOK BUSINESS, INC. and SPRING ENTERPRISES, LP, are compelled to remove all physical barriers that exist at Zip N and the Property, including those specifically set forth herein, and make Zip N and the Property accessible to and usable by Plaintiff and other persons with disabilities.

35.     A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Amended Complaint, that precluded and/or limited Plaintiff's access to Zip N and the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Zip N and the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

(i)     Near Unit 99, the accessible parking space has a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This violation made it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

7

(ii)     Near Unit 99, the access aisle adjacent to the accessible parking space has a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This violation made it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(iii)    Near Unit 99, the ground surfaces of the accessible parking space have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 302, 303 and 502.4 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

(iv)     Near Unit 99, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(v)      Near Unit 99, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This violation made it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(vi)     Near Unit 99, the Property has an accessible ramp that lacks finished edges or edge protection and/or is otherwise in violation of Section 405.9 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to access the units of the Property.

(vii)    Near Unit 99, the Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope exceeding 1:12 in violation

of Section 405.2 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

(viii)   Near Unit 99, the accessible parking space is missing a proper identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to locate an accessible parking space.

(ix)   Due to a policy by the tenant of placing a speaker in the exterior accessible route in front of Metro PCS, there are publicly accessible areas of the Property having accessible routes with clear widths below the minimum 36 (thirty-six) inch requirement as required by Section 403.5.1 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access exterior public features of the Property.

(x)   Due to obstacles placed in the exterior accessible route, the Property lacks an accessible route connecting accessible facilities, accessible elements and/or accessible spaces of the Property in violation of Section 206.2.2 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to access public features of the Property.

(xi)   Near Zip'n, the accessible parking space and associated access aisle have a slope and in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This violation made it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xii)   Near Zip'n, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of

the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xiii)    Near Zip'n, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This violation made it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(xiv)    Near Zip'n, the Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

(xv)     In Zip'n, there are sales and services counters lacking any portion of the counter that has a maximum height of 36 (thirty-six) inches from the finished floor in violation of Section 904.4 of the 2010 ADAAG standards, all portions of the sales and service counter exceed 36 (thirty-six) inches in height from the finished floor. This violation made it difficult for Plaintiff to properly transact business at the Property.

(xvi)    In Zip'n, the vertical reach to the frozen drink and soda dispensers exceeds the maximum allowable height of 48 (forty-eight) inches above the finish floor or ground in violation of Section 308.3.1 of the ADAAG standards. This violation made it difficult for Plaintiff to property utilize public features of the Property.

(xvii)   Defendants fail to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

**ZIP'N RESTROOMS**

(i)     The door to the restrooms has a maximum clear width below 32 (thirty-two) inches in violation of Section 404.2.3 of the 2010 ADAAG standards. This made it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

(ii)    The restroom lacks signage in compliance with Sections 216.8 and 703 of the 2010 ADAAG standards. This made it difficult for Plaintiff and/or any disabled individual to locate accessible restroom facilities.

(iii)   The restrooms lack proper door hardware in violation of Section 404.2.7 of the 2010 ADAAG standards. This made it difficult for Plaintiff and/or any disabled individual to utilize the restroom facilities.

(iv)    The grab bars/handrails adjacent to the commode are missing and violate Section 604.5 of the 2010 ADAAG standards. This made it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

(v)     The hand operated flush control is not located on the open side of the accessible toilet in violation of Section 604.6 of the 2010 ADAAG standards. This made it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

(vi)    The toilet paper dispenser in the accessible toilet is not positioned properly and violates Section 604.7 of the 2010 ADAAG standards. This made it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

(vii)   The lavatories and/or sinks in the restrooms have exposed pipes and surfaces and are not insulated or configured to protect against contact in violation of Section

606.5 of the 2010 ADAAG standards. This made it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

(viii)    The restroom door swings into the clear floor space or space required by fixtures in the restrooms in violation of Section 603.2.3 of the 2010 ADAAG standards. This made it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

(ix)    In addition to the previously cited violations, it should be noted that the door to the restroom area has a sign that states that it is for employees only, but when an able-bodied individual requested to use the restroom, they were given access. As a result, the restroom should be considered a public accommodation and, therefore, must be ADA compliant.

36.    The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at Zip N and the Property.

37.    Plaintiff requires an inspection of Zip N and the Property in order to determine all of the discriminatory conditions present at Zip N and the Property in violation of the ADA.

38.    The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

39.     All of the violations alleged herein are readily achievable to modify to Zip N and the Property into compliance with the ADA.

40.    Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at Zip N and the Property is readily achievable because the nature and cost of the modifications are relatively low as the exterior violations do not require a lot of

12

concrete work or adjusting the surface slope of the parking lot. The interior violations are mostly changing of bathroom fixtures and not major plumbing work.

41.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at Zip N and the Property is readily achievable because Defendants, EDGEBROOK BUSINESS, INC. and SPRING ENTERPRISES, LP, have the financial resources to make the necessary modifications as the market value of the Property is listed on the Property Appraiser as $860,272.00.

42.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

43.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendants, EDGEBROOK BUSINESS, INC. and SPRING ENTERPRISES, LP, are required to remove the physical barriers, dangerous conditions and ADA violations that exist at Zip N and the Property, including those alleged herein.

44.     Plaintiff's requested relief serves the public interest.

45.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendants, EDGEBROOK BUSINESS, INC. and SPRING ENTERPRISES, LP.

46.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendants, EDGEBROOK BUSINESS, INC. and SPRING ENTERPRISES, LP, pursuant to 42 U.S.C. §§ 12188 and 12205.

47.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendants,

EDGEBROOK BUSINESS, INC. and SPRING ENTERPRISES, LP, to modify Zip N and the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant, EDGEBROOK BUSINESS, INC., in violation of the ADA and ADAAG;

(b)     That the Court find Defendant, SPRING ENTERPRISES, LP, in violation of the ADA and ADAAG;

(c)     That the Court issue a permanent injunction enjoining Defendants, EDGEBROOK BUSINESS, INC. and SPRING ENTERPRISES, LP, from continuing their discriminatory practices;

(d)     That the Court issue an Order requiring Defendants, EDGEBROOK BUSINESS, INC. and SPRING ENTERPRISES, LP, to (i) remove the physical barriers to access and (ii) alter the subject Zip N and the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(e)     That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(f)     That the Court grant such further relief as deemed just and equitable in light of the

circumstances.

Dated: February 3, 2020.

Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
*Attorney-in-Charge for Plaintiff*
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com